UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DALE FREEMAN #752710,　　　　　　　　　　Case No. 2:18-cv-00068

　　　　　Plaintiff,　　　　　　　　　　　　　　Hon. Robert J. Jonker
　　　　　　　　　　　　　　　　　　　　　　　Chief U.S. District Judge
　　v.

JENNIFER HEADLEY, et al.,

　　　　　Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.　　Introduction

This is a civil rights action brought by state prisoner Dale Freeman pursuant to 42 U.S.C. § 1983. Freeman is a paraplegic. He alleges Eighth Amendment deliberate indifference claims associated with his condition against Nurses Headley, Haske, Brown and Merling; Nurse Supervisor Staine; Nurse Practitioner Buchanan; and Doctors Canlas, and Coleman.[1]

Defendants Headley, Staine, Haske, Brown, and Merling (the remaining Defendants employed by the Michigan Department of Corrections (MDOC)[2]) have filed a motion for summary judgment. Defendants concede that Freeman properly exhausted his two claims against Headley and his one claim against Merling. (ECF

---

[1]　　The Court dismissed Freeman's claims against Doctor Spitters and Grievance Coordinator McLean for failure to state a claim. (ECF No. 10.)

[2]　　Defendants Buchanan, Canlas and Coleman are employed by Corizon Health.

1

No. 49, PageID.365.) Freeman has responded. (ECF No. 57.) The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court (1) grant Defendants' summary judgment motion as to Defendant Brown, but deny as Defendants Haske and Staine, and (2) dismiss Freeman's Eighth Amendment deliberate indifference claim against Brown without prejudice.

## II. Summary of Plaintiff's Claims and the Factual Allegations Supporting His Claims

The table below summarizes each of Freeman's claims against each Defendant and the alleged facts supporting the claims.

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Headley | 8th Amendment Deliberate Indifference | 6/9/2017-7/9/2017 | Headley allegedly failed to properly evaluate and address Freeman's medical needs during these periods, which resulted in Freeman's air mattress and catheters being confiscated as contraband. (ECF No. 1, PageID.5-6.) |
| 2 | Headley | 8th Amendment Deliberate Indifference | 9/11/2017 | Headley confiscated Freeman's air mattress and catheters despite being aware of the medical concerns her conduct would cause Freeman. As a result, Freeman contracted a urinary tract infection. (ECF No. 1, PageID.6.) |
| 3 | Staine | 8th Amendment Deliberate Indifference | 9/19/2017 | During Staine's medication rounds, Freeman tried to inform her of his injuries, but she ignored him. (ECF No. 1, PageID.7.) |
| 4 | Haske | 8th Amendment Deliberate Indifference | 6/9/2017-7/9/2017 | Haske allegedly failed to properly evaluate and address Freeman's medical needs during these periods, which resulted in Freeman's air mattress and catheters being confiscated as contraband. (ECF No. 1, PageID.5-6.) |
| 5 | Buchanan | 8th Amendment Deliberate Indifference | 9/29/2017 | Freeman allegedly informed Buchanan that he was in pain, but she dismissed him as being belligerent and refused to render medical treatment. (ECF No. 1, PageID.7.) |

2

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 6 | Brown | 8th Amendment Deliberate Indifference | 6/9/2017-7/9/2017 | Brown allegedly failed to properly evaluate and address Freeman's medical needs during these periods, which resulted in Freeman's air mattress and catheters being confiscated as contraband. (ECF No. 1, PageID.5-6.) |
| 7 | Brown | 8th Amendment Deliberate Indifference | 9/22/2017 | After being shown sores on Freeman's leg and hip, Brown allegedly stated that they were small and gave Freeman a band aid. (ECF No. 1, PageID.7.) |
| 8 | Merling | 8th Amendment Deliberate Indifference | 6/9/2017-7/9/2017 | Merling allegedly failed to properly evaluate and address Freeman's medical needs during these periods, which resulted in Freeman's air mattress and catheters being confiscated as contraband. (ECF No. 1, PageID.5-6.) |
| 9 | Canlas | 8th Amendment Deliberate Indifference | 6/9/2017 | Canlas allegedly failed to properly evaluate Freeman, which resulted in Freeman's injuries. (ECF No. 1, PageID.5.) |
| 10 | Coleman | 8th Amendment Deliberate Indifference | 9/14/2017 | Coleman was referred a special medical accommodation request for Freeman. Coleman allegedly ignored the request. ECF No. 1, PageID.7.) |

## III. Relevant Grievances filed by Plaintiff and Pursued Through Step III

Summarized in the table below are the relevant grievances filed by Freeman and pursued through Step III.

| Grievance Number | MDOC Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 49-3, PageID. |
|---|---|---|---|---|
| URF-17-09-2753-12I | Headley (Staine was Step I respondent) | On 9/11/17, his air mattress was taken away when he was placed in segregation and he was denied catheters. | Denied at Step I; denial upheld through Step III | 394-400 |
| URF-17-09-2837-28J | None (Corizon Def. Coleman grieved) | On 9/11/17, his air mattress was taken away when he was placed in segregation, despite Freeman having received | Rejected at Step I for violating P.D. 03.02.130. Instructed to appeal grievance (URF-09-2753- | 413-419 |

3

| Grievance Number | MDOC Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 49-3, PageID. |
|---|---|---|---|---|
| | | an air mattress previously. | 12i) to next step; rejection upheld through Step III | |
| URF-17-10-2962-12E1 | None (Corizon Def. Buchanan grieved; Staine was Step I respondent) | Failure to treat pressure ulcer on 9/29/17 | Denied at Step I; denial upheld through Step III | 401-407 |
| URF-17-10-2961-12E3 | Haske & Headley (Staine was Step I respondent) | Failure to address leaking dressing between 10.3.17 and 10/4/17 | Denied at Step I; denial upheld through Step III | 389-393 |
| URF-17-10-3195-12E3 | Merling, Headley, Staine, and Haske | Failure to treat infections and ulcers, request for better pain management, request for transfer between 10/14/17 and 10/25/17 | Denied at Step I; denial upheld through Step III | 382-388 |

### IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

4

## V. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[3], the inmate must first

---

[3] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are

7

raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity'

---

"subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## VI. Analysis

The questions presented are whether Freeman properly exhausted his claims against Haske, Staine, and Brown.[5] For the following reasons, it is the opinion of the undersigned that Freeman failed to properly exhaust his Eighth Amendment deliberate indifference claim against Brown but did properly exhaust his claim against Haske and Staine.

### A. *Failure to Properly Exhaust Freeman's Claims Against Brown*

Freeman failed to properly exhaust his Eighth Amendment deliberate Indifference claim against Brown. Freeman concedes "that he did not exhaust administrative remedies for his claims against Brown." (ECF No. 57-1, PageID.457.) Nevertheless, Freeman argues that his failure to properly exhaust his claim is excused because Staine's conduct rendered the grievance process unavailable to him.[6]

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[5] Defendants concede that Freeman did properly exhaust both of his Eighth Amendment deliberate indifference claims against Headley and his one Eighth Amendment deliberate indifference claim against Merling. (ECF No. 49, PageID.365.)

[6] Freeman does not elaborate or provide evidence as to how Staine prevented him from utilizing the grievance process against Brown. (ECF No. 57-1, PageID.457.)

(*Id.*) In rare circumstances, prisoners will be excused from the PRLA's exhaustion requirement when the prisoner can show that (1) prison officials are unable or consistently unwilling to provide relief and the exhaustion procedures may have provided relief, or (2) "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60. There is nothing in the record to support a finding of either instance regarding Staine preventing Freeman from utilizing the grievance process against Brown. Instead, there is evidence to show that Staine acted as the respondent to a few Freeman's grievances and that those grievances were exhausted through Step III. (ECF No. 49-3, PageID.385, 392, and 397.)

Again, the PLRA does not impose a "name all defendants requirement" when prisoners file their initial grievances, the administrative review process is designed to "allow[] a prison to address complaints about the program it administers before being subjected to suit." *Bock*, 549 U.S. at 217, 219. Here, MDOC never received an opportunity to address and potentially remedy his claim against Brown. The undersigned respectfully recommends that the Court find that Freeman failed to properly exhaust all administrative remedies and that no genuine issue of material fact exists that must be submitted to a jury regarding an Eighth Amendment deliberate indifference claim against Brown.

### B. *Proper Exhaustion of Freeman's Claim Against Haske*

Freeman properly exhausted his Eighth Amendment deliberate indifference claim against Haske. Freeman directs the Court's attention to grievances **URF-17-10-3195-12E3** and **URF-17-09-2753-12i** as evidence of the exhaustion. (ECF No. 57-1, PageID.456-457.)

As shown below, Freeman names Haske at Step I of grievance **URF-17-10-3195-12E3**. (ECF No. 49-3, PageID.365.)

> SURE THAT IM GIVING THE PROPER ANTIBIOTICS TO TREAT THIS ON GOING INFECTION IN MY PRESSURE ULCERS, THATS SENT ME TO THE HOSPITAL 3 TIMES FROM 4-25 to 4-28-17, 4-30 to 5-2-17 AGAIN ON 10-19-17... THE INFECTION IS NOT GOING AWAY EVEN THOUGH IM GIVING MULTIPLE ANTIBIOTICS MY BODY AND PRESSURE ULCERS FEEL WORSE, DRESSING CHANGES ARE PAINFUL I WOULD LIKE TO GET TRANSFERED TO A FACILITY THAT PROVIDE BETTER OFF SITE HOSPITAL CARE THAT CAN LOWER THE RISK OF INFECTIONS THAT CAN CAUSE AMPUTATION, DEATH OR ANY OTHER SERIOUS BODILY HARM. WITH ACURATE DIAGNOSIS TO PREVENT MEDICAL MALPRACTICE AND NEGLIGENCE.. AGAIN
>
> I ALSO WOULD LIKE A FACILITY THAT WILL TAKE MORE SERIOUS STEPS TO SEE TO THAT I HAVE PAIN MEDICATION TO STOP THE PAIN AND SUFFERING INSTEAD OF OVER THE COUNTER MEDS, AND MEDICATION THAT HAS BEEN PRESCRIBED FOR OVER 3 YEARS MOBIC AND TYLENOL..
>
> I ALSO WOULD LIKE TO BE AWARDED FOR ANY DAMAGES AS FAR AS INJURY THAT RESULTED FROM VIOLATIONS OF 8th AMENDMENT RIGHTS OR MEDICAL MALPRACTICE NEGLIGENCE IF IT COMES TO CIVIL ACTIONS IN THE FUTURE... FOR PRESSURE ULCERS OR ANY OTHER INJURYS THAT RESULTED FROM PRISON MEDICAL OFFICIALS OR OUTSIDE ASSISTANCE.
>
> I WOULD LIKE TO NOTE THAT THE FACILITY IM CURRENTLY AT CAN NOT TREAT THE INFECTIONS I HAVE AND THEY DO AGREE AND HAVE TOLD ME THAT I NEED TO BE AT A INFIRMARY....
>
> I FEAR FOR LOSING MY LEGG OR DEATH DUE TO INFECTION THATS BEEN ON GOING AND TREATED BY WAR MEMORIAL HOSPITAL, AND URF FACILITY ALL THIS COULD HAVE BEEN PREVENTED MULTIPLE TIMES STARTING WITH SERIOUS MEDICAL SUPPLIES, PROPER BANDAGES, PROPER DIAGNOSIS, I.V. ANTIBIOTICS AND OTHER STEPS......
>
> TIFFANY HASKE R. NURSE
> JENN HEDLY   R. NURSE
> BETHANY STAINE SUPERVISOR NURSE
> BRENDA BUCANON NURSE PRACTION
>
> PLEASE ACCEPT CELL-1
> IM LATE FILING, DUE TO WAITING ON CHANCE TO RESOLVE FROM FAMILY COMPLAINT AND 10-28-17 WAITING TO SEE IF INFECTION LEAVE (CURE) HAVENT THATS WHY IM LATE
>
> (4 COPIES)
>
> DALE FREEMAN
> #752710
> Dale [signature]
>
> 10 F 4

Defendants nevertheless argue that Freeman failed to properly exhaust his claim against Haske because Freeman "did not state how Freeman attempted to resolve [his complaints in] the grievance with" Haske. (ECF No.49, PageID.365.) The crux of Defendant's argument is that MDOC policy requires prisoners to attempt to resolve their complaints with staff members before filing a grievance against them.

12

MDOC PD 03.02.130 ¶ P. Essentially Freeman failed to comply with all MDOC's prison procedures and deadlines. Indeed, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

However, Defendants' argument fails because prison officials waive enforcement of these procedural rules when they instead consider a non-exhausted claim on its merits. *Pramstaller*, 603 F.3d at 325. Grievance **URF-17-10-3195-12E3** was denied on the merits at Steps I, II, and III. (ECF No. 49-3, PageID.382-388.) Because MDOC denied Freeman's grievance on the merits, MDOC waived Defendants' procedure argument regarding Freeman's claim against Haske. For the reasons stated above, the undersigned concludes that Freeman properly exhausted his claim against Haske.

Regarding grievance **URF-17-09-2753-12i**, no claim against Haske in this grievance is exhausted. In this grievance, Freeman fails to complain about Haske. (ECF No. 49-3, PageID.394-400.) He complains about several other MDOC employees, but not Haske. (*Id*.) Although the PLRA does not impose a "name all defendants requirement" when prisoners file their initial grievances, the administrative review process is designed to "allow[] a prison to address complaints about the program it administers before being subjected to suit." *Bock*, 549 U.S. at 217, 219. As such, MDOC was denied the opportunity to respond to any complaint against Haske if Freeman intended present the complaint in grievance **URF-17-09-**

13

**2753-12i**. The undersigned respectfully recommends that the Court find that any claim against Haske contained in grievance **URF-17-09-2753-12i** is not properly exhausted and should be dismissed.

### C. *Proper Exhaustion of Claims Against Staine*

Freeman properly exhausted his Eighth Amendment deliberate indifference claim against Staine. Freeman again directs the Court's attention to grievances **URF-17-10-3195-12E3** and **URF-17-09-2753-12i** as evidence of the exhaustion. (ECF No. 57-1, PageID.456-457.) Shown below, are excerpts from grievance **URF-17-10-3195-12E3** at Step I (ECF No. 49-3, PageID.385) and grievance **URF-17-09-2753-12i** at Step I (ECF No. 49-3, PageID.397) and Step III (ECF No. 49-3, PageID.400) where Freeman complains about Staine.

## Excerpt from grievance URF-17-10-3195-12E3 at Step I
## (ECF No. 49-3, PageID.385)

SURE THAT I'M GIVING THE PROPER ANTIBIOTICS TO TREAT THIS ON GOING INFECTION IN MY PRESSURE ULCERS, THAT'S SENT ME TO THE HOSPITAL 3 TIMES FROM 4-25 to 4-28-17, 4-30 to 10-2-17 AGAIN ON 10-14-17... THE INFECTION IS NOT GOING AWAY EVEN THOUGH I'M GIVING MULTIPLE ANTIBIOTICS MY BODY AND PRESSURE ULCERS FEEL WORSE, DRESSING CHANGES ARE PAINFUL I WOULD LIKE TO GET TRANSFERRED TO A FACILITY THAT PROVIDES BETTER OFF SITE HOSPITAL CARE THAT CAN LOWER THE RISK OF INFECTIONS THAT CAN CAUSE AMPUTATION, DEATH OR ANY OTHER SERIOUS BODILY HARM. WITH ACURATE DIAGNOSIS TO PREVENT MEDICAL MALPRACTICE AND NEGLIGENCE.. AGAIN

I ALSO WOULD LIKE A FACILITY THAT WILL TAKE MORE SERIOUS STEPS TO SEE TO THAT I HAVE PAIN MEDICATION TO STOP THE PAIN AND SUFFERING INSTEAD OF OVER THE COUNTER MEDS, AND MEDICATION THAT HAS BEEN PRESCRIBED FOR OVER 3 YEARS MOBIC AND TYLENOL.

I ALSO WOULD LIKE TO BE AWARDED FOR ANY DAMAGES AS FAR AS INJURY THAT RESULTED FROM VIOLATIONS OF 8TH AMENDMENT RIGHTS OR MEDICAL MALPRACTICE NEGLIGENCE IF IT COMES TO CIVIL ACTIONS IN THE FUTURE... FOR PRESSURE ULCERS OR ANY OTHER INJURYS THAT RESULTED FROM PRISON MEDICAL OFFICIALS OR OUTSIDE ASSISTANCE.

I WOULD LIKE TO NOTE THAT THE FACILITY I'M CURRENTLY AT CAN NOT TREAT THE INFECTIONS I HAVE AND THEY DO AGREE AND HAVE TOLD ME THAT I NEED TO BE AT A INFIRMARY....

TIFFANY HASKE R. NURSE
JENN HEDLY R. NURSE
BETHANY STAINE SUPERVISON NURSE
BRENDA BUCANON NURSE PRACTION

I FEAR FOR LOSING MY LEGG OR DEATH DUE TO INFECTION THATS BEEN ON GOING AND TREATED BY WAR MEMORIAL HOSPITAL, AND URF FACILITY ALL THIS COULD HAVE BEEN PREVENTED MULTIPLE TIMES STARTING WITH SERIOUS MEDICAL SUPPLIES, PROPER BANDAGES, PROPER DIAGNOSIS, I.V. ANTIBIOTICS AND OTHER STEPS.....

@ CELL-1

PLEASE ACCEPT I'M LATE FILING DUE TO WAITIN ON CHANCE TO RESOLVE FROM FAMILY COMPLAINT AND WAITING TO SEE IF INFECTION LEAVE (CURE) HAVEN'T THATS WHY I'M LATE

(4 COPIES)   10-28-17

DALE FREEMAN
#752710
Dale

1 OF 4

**Excerpt from grievance URF-17-09-2753-12i at Step I**
**(ECF No. 49-3, PageID.397)**

I spoke with Nurse Garland, no help. I told Nurse Strangly it was blood in my urine, thats when I recieved vitals and eventually burning urination. All this could have been prevented on 9-11-17 with right equipment.

Date: Dale
Grievant's Signature

RESPONSE (Grievant Interviewed? ☒ Yes ☐ No If No, give explanation. If resolved, explain resolution.)

See attached

Respondent's Signature
B Stain
Respondent's Name (Print)

Date: 9/22/17
RN 3
Working Title

Reviewer's Signature
Melissa LaPlaunt
Reviewer's Name (Print)

Date: 9-22-17
HUM Rel.
Working Title

16

**Excerpt from grievance URF-17-09-2753-12i at Step II
(ECF No. 49-3, PageID.400)**

GRIEVANCE URF 1709 2753 12I
STEP II DIRECTORS OFFICE
APPEAL
AIRMATRESS WAS NEVER DISCUSSED IN STEP II
RESPONSE NURSE SUPERVISOR BETHANY STAINE
STAINE STATES IN STEP 1 RESPONSE THAT
PATIENT FREEMAN (GRIEVANT) MAY SUBMIT Health care
Request IF HE DEVELOP SIGNS or symptoms OF SKIN
BREAK DOWN. BUT ON the very SAME DAY UPON REVIEW
OF this PARTICULAR grievance I personally Showed Supervisor
NURSE A Pressure ulcer On my left legg (Caused by
Nurse JENN HEALY Taking my AIR MATRESS on 9-11-17
AND REGIONAL MANAGER RICKLEY & COLEMAN DEFEATING
PHYSICIAN REQUEST FOR AIRMATRESS 9-14-17, To prevent
pressure ulcers, And Back ache) Nurse Supervisor
Failed to give me Bandages to prevent Infections, I
was Admitted Into hospital on 9-25-17 to 9-28-17
THAN AGAIN on 9-30-17 to 10-2-17, AND 10-14-17
Multiple Bandage changes, Fevers, pain and suffering
Multiple Antibiotics. This IS REASON why
I APPEALED TO STEP III. DENIAL OF MY
SERIOUS MEDICAL NEEDS which RESULTED IN INJURY
AND THE FACT I WAS DEPRIVED OF
MEDICAL CATHETERS (AND IM A PARAPLEGIA
IN A WHEELCHAIR) FOR OVER 24 hours   DALE FREEMAN
was CRUEL AND should Have                #752710
Been prevented DUE TO MY CHART       10-27-17
STATES I USE CATHETERS
                                      Dale [signature]

Nevertheless, Defendants again argue that Freeman failed to properly exhaust his Eighth Amendment deliberate indifference claim against Staine because Freeman "did not state how Freeman attempted to resolve [his complaints in] the grievance with" Staine. (ECF No.49, PageID.365.) Defendants' argument fails, as it did with Haske, because MDOC waived their procedure argument when MDOC denied both grievances on the merits at Steps I, II, and III. (ECF No. 49-3, PageID.382-388, 394-400.)

For the above reasons, the undersigned concludes that Freeman properly exhausted his Eighth Amendment deliberate indifference claim against Staine.

## VII. Recommendation

The undersigned respectfully recommends that this Court (1) grant Defendants' motion for summary judgment as to Defendant Brown and deny as to Defendants Haske and Staine, and (2) dismiss Freeman's Eighth Amendment deliberate indifference claim against Brown without prejudice. If the Court accepts this recommendation, Freeman's Eighth Amendment deliberate indifference claims against Haske, Staine, Headley, and Merling will remain.

The remaining claims – including the claims against non-MDOC employees – are summarized in the chart below.

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Headley | 8th Amendment Deliberate Indifference | 6/9/2017-7/9/2017 | Headley allegedly failed to properly evaluate and address Freeman's medical needs during these periods, which resulted in Freeman's air mattress and catheters being confiscated as contraband. (ECF No. 1, PageID.5-6.) |

18

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 2 | Headley | 8th Amendment Deliberate Indifference | 9/11/2017 | Headley confiscated Freeman's air mattress and catheters despite being aware of the medical concerns her conduct would cause Freeman. As a result, Freeman contracted a urinary tract infection. (ECF No. 1, PageID.6.) |
| 3 | Staine | 8th Amendment Deliberate Indifference | 9/19/2017 | During Staine's medication rounds, Freeman tried to inform her of his injuries, but she ignored him. (ECF No. 1, PageID.7.) |
| 4 | Haske | 8th Amendment Deliberate Indifference | 6/9/2017-7/9/2017 | Haske allegedly failed to properly evaluate and address Freeman's medical needs during these periods, which resulted in Freeman's air mattress and catheters being confiscated as contraband. (ECF No. 1, PageID.5-6.) |
| 5 | Buchanan | 8th Amendment Deliberate Indifference | 9/29/2017 | Freeman allegedly informed Buchanan that he was in pain, but she dismissed him as being belligerent and refused to render medical treatment. (ECF No. 1, PageID.7.) |
| 8 | Merling | 8th Amendment Deliberate Indifference | 6/9/2017-7/9/2017 | Merling allegedly failed to properly evaluate and address Freeman's medical needs during these periods, which resulted in Freeman's air mattress and catheters being confiscated as contraband. (ECF No. 1, PageID.5-6.) |
| 9 | Canlas | 8th Amendment Deliberate Indifference | 6/9/2017 | Canlas allegedly failed to properly evaluate Freeman, which resulted in Freeman's injuries. (ECF No. 1, PageID.5.) |
| 10 | Coleman | 8th Amendment Deliberate Indifference | 9/14/2017 | Coleman was referred a special medical accommodation request for Freeman. Coleman allegedly ignored the request. ECF No. 1, PageID.7.) |

Dated:   February 6, 2020                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P.

72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).