UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DALE FREEMAN #752710,                          Case No. 2:18-cv-00068

                Plaintiff,                  Hon. Robert J. Jonker
                                          Chief U.S. District Judge

     v.

JENNIFER HEADLEY, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

## I.    Introduction

This is a civil rights action brought by state prisoner Dale Freeman pursuant to 42 U.S.C. § 1983. Freeman's claims relate to events that took place at the Chippewa Correctional Facility (URF) in September and October 2017. Freeman is a paraplegic. His condition makes him vulnerable to secondary medical complications, such as skin ulcers and infections. According to Freeman, Defendants denied him medical equipment (an air mattress) and adequate treatment (daily bandage changes) that would have prevented serious secondary medical complications. Freeman asserts that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, and intentionally subjected him to mental and emotional distress.

There are two sets of Defendants remaining in the lawsuit. The first are employees of the Michigan Department of Corrections (MDOC). The MDOC

Defendants are Registered Nurses Headley and Stain.[1]  The other Defendants are employees of Corizon Correctional Health (CCH).  They are Nurse Practitioner (NP) Buchanan and Dr. Coleman.[2]

This report and recommendation (R&R) addresses the parties' three pending motions for summary judgment[3] (ECF Nos. 70, 72, 81) and the CCH Defendants' motion (ECF No. 83) to strike Freeman's reply (ECF No. 82) to their response.

The undersigned respectfully recommends that this Court:

- dismiss Freeman's intentional infliction of emotional distress claims pursuant to the Court's screening authority,

- grant the MDOC Defendants' motion for partial summary judgment (ECF No. 70),

- deny Freeman's motion for summary judgment (ECF No. 72),

---

[1]    Throughout Freeman's filings, he spells Registered Nurse (RN) Stain's name with an "e" at the end (Staine).  In this R&R, the undersigned will use the spelling without an "e" at the end, which is how because RN Stain spells her name.

[2]    The Court dismissed Freeman's claims against Dr. Spitters and Grievance Coordinator McLean for failure to state a claim.  (ECF No. 10.)  In Freeman's amended complaint, he omitted his claims against RNs Haske, Brown, and Merling. (ECF No. 66.)  Thus, claims against them were terminated.

[3]    The MDOC Defendants filed a summary judgment motion and supporting brief that argues that Freeman failed to properly exhaust his claim against RN Stain. (ECF Nos. 70, 71.)  In the alternative, that MDOC Defendants argue that the Court should dismiss the claim against RN Stain for lack of personal involvement.  Freeman filed a summary judgment motion and supporting brief that argued the merits of his claims against the MDOC and CCH Defendants.  (ECF Nos. 73, 74.)  The CCH Defendants filed a summary judgment and supporting brief that argues that Freeman failed to properly exhaust his claims against them.  They also assert that they are entitled to summary judgment based on the absence of a genuine issue of material fact as to the substance of those claims.  (ECF No. 81.)

- grant the CCH Defendants' motion for summary judgment (ECF No. 81), and

- deny the CCH Defendants' motion to strike Freeman's reply to their response (ECF No. 83).

If the Court accepts the recommendation, Freeman's Eighth Amendment deliberate indifference claims against RN Headley will be the only remaining claim.

## II.    Additional Relevant Procedural History

On May 11, 2018, Freeman initiated this lawsuit in federal court by filing a verified complaint.  (ECF No. 1.)  In the verified complaint, Freeman alleged that ten defendants violated his rights under the Eighth Amendment by being deliberately indifferent to Freeman's need for necessary medical care.

On October 24, 2018, the Court issued a screening opinion and order.  (ECF No. 9, 10.)  The Court dismissed the Eighth Amendment deliberate indifference claim against Chippewa Correctional Facility (URF) Step I Grievance Coordinator Michael McLean because Freeman failed to allege any specific facts against McLean.

On August 29, 2019, the MDOC Defendants filed a summary judgment motion and supporting brief that argued that Freeman failed to properly exhaust his claims against them.  (ECF No. 48, 49.)  Freeman responded.  (ECF No. 57.)  The undersigned issued an R&R that respectfully recommended that the Court grant the motion only as to the claims against Defendant Brown.  (ECF No. 59.)

On February 13, 2020, Freeman requested leave to file an amended complaint. His amended complaint stated claims only against Dr. Coleman, NP Buchanan, RN

3

Headley, and RN Stain.  (ECF No. 61.)  The Court granted Freeman's request (ECF No. 61) and dismissed the Court's R&R (ECF No. 59) as moot.  (ECF No. 65.)

On March 2, 2020, Freeman filed his amended verified complaint.  (ECF No. 66.)  Freeman's remaining claims are summarized below in Section IV.

On March 30, 2020, the MDOC Defendants (again, RNs Headley and Stain) filed a motion for partial summary judgment and a supporting brief.  (ECF Nos. 70, 71.)  The MDOC Defendants argued that Freeman's claims against RN Stain should be dismissed because Freeman failed to properly exhaust his claims against RN Stain, and due to her lack of personal involvement.  Freeman filed a response.  (ECF No. 75.)

On April 10, 2020, Freeman filed a summary judgment motion and supporting brief.  (ECF Nos. 72 and 73.)  Freeman asserts that there are no genuine issues of fact that would permit a reasonable jury to find for the Defendants.  In response, the CCH Defendants (NP Buchanan and Dr. Coleman) argued that Freeman failed to show an absence of genuine issues of fact as to the merits of his claims.  (ECF No. 76.)  The MDOC Defendants responded and argued that the Court should deny Freeman's motion and grant their motion (ECF No. 70).  (ECF No. 77.)  Freeman replied to the MDOC and CCH Defendants separately.  (ECF Nos. 79, 82.)

The CCH Defendants then filed a motion requesting the Court strike Freeman's response (ECF No. 82) for failure to comply with the Local Rules.  (ECF No. 83.)  Freeman responded to the motion to strike.  (ECF No. 86.)  Freeman

admitted that he did not follow Local Rule 7.2(c) but argued that the Court should deny the motion because Freeman did not raise new issues.

On June 9, 2020, the CCH Defendants filed a summary judgment motion and supporting brief.  (ECF No. 81.)  They argue that they are entitled to summary judgment because there is no genuine issue of fact that Freeman failed to establish his claims against them, and because Freeman failed to properly exhaust his claims against them.  Freeman responded and argued that there are genuine issues of fact and that he properly exhausted his claims against CCH Defendants.  (ECF No. 85.) The CCH Defendants replied.  (ECF No. 87.)

On August 3, 2020, Freeman requested the Court to set a new dispositive motion deadline.  (ECF No. 88.)  The MDOC Defendants responded that the Court should deny the request without prejudice, citing the numerous dispositive motions pending.  (ECF No. 88.)

### III.    A Brief Summary of Freeman's Relevant Medical Records

Freeman's medical record show that from September 15, 2017 to February 2, 2018, he has received consistent monitoring.  (ECF No. 81-2, PageID.910-1007.) Initially, Freeman was being monitored for the beginning signs of a pressure ulcer, which would entitle Freeman to an air mattress, as Freeman was then requesting. On September 15, 2017, Freeman registered a 15 on the Braden Scale[4], which means

---

[4]    The Braden Scale is a six factored assessment for health care professionals to use to evaluate a patient's risk of developing a pressure ulcer.  Holly Hovan, *Understanding the Braden Scale: Focus on Sensory Perception (Part 1)*, www.woundsource.com,  https://www.woundsource.com/blog/understanding-braden-scale-focus-sensory-perception-part-1 (last visited Nov. 13, 2020).

that Freeman was not currently suffering a skin breakdown.[5]  (ECF No. 81-2, PageID.912.)  That same day, NP Buchanan explained to Freeman that he did not qualify under the Medical Service Advisory Committee (MSAC) guidelines to receive an air mattress due to his results.  (*Id.*, PageID.910.)

Due to continued complaints about pain, on September 21 and 23, 2017, Freeman was examined for signs of a pressure ulcer on his legs.  (*Id.*, PageID.915, 917.)  During those examinations, Freeman did not subjectively show signs of a pressure ulcer.  (*Id.*)  On September 23, 2017, nurses also explained to Freeman that the dressing for an earlier wound on his hip needed to be changed every three days. (ECF No. 81-2, PageID.919.)  Freeman agreed with the nurses' explanation.  (*Id.*)

---

[5]    As shown in the MSAC Guidelines, Freeman needed to score a 14 or lower on the Braden Scale to be entitled to an air mattress accommodation.  (ECF No. 81-5.)

| MICHIGAN DEPARTMENT OF CORRECTIONS BUREAU OF HEALTH CARE SERVICES | | NUMBER 0006 |
|---|---|---|
| **MEDICAL SERVICE ADVISORY COMMITTEE -** ⚕ **GUIDELINES** | | EFFECTIVE DATE: 12/15/09 |
| SUBJECT: **Air Mattress Guidelines** | PAGE: OF 1 | SUPERSEDES: 1/18/00 |

Air mattresses may be ordered for prisoners when one of the following medical reasons exists:

1. History of skin breakdown or decubitus ulcers due to ongoing chronic medical problems, OR

2. Currently existing skin breakdown or decubitus ulcers, OR

3. Medical conditions exist that place the patient at high risk (Braden Score of 14 or less) for the development of skin breakdown or decubitus ulcers.

Air mattresses should be replaced as often as necessary to maintain a functional mattress for the patient at all times.

(ECF No. 81-5.)

On September 25, 2017, Freeman received another evaluation.  (*Id.*, PageID.922.)  Freeman exhibited signs of infection (increased redness) on his left knee and received a medical order to see Dr. Canlas.  (*Id.*)    That same day, Dr. Canlas cleansed, drained, and dressed Freeman's wound.  (*Id.*, PageID.924.)  Dr. Canlas advised Freeman to keep the dressing on his wound, and Freeman agreed. (*Id.*)  Later, Freeman submitted a kite[6] requesting an air mattress.  (ECF No. 81-2, PageID.925.)  The request was deferred for the pending result of Freeman's medical visit.  (*Id.*)

Upon return to the MDOC facility, on September 28, 2017, NP Buchanan was consulted and reviewed Freeman's paperwork.  (*Id.*, PageID.929.)  Freeman's bandages were not changed when he saw NP Buchanan because Freeman's medical orders stated that the bandages should be changed every three days and his bandages were changed the day before (September 27, 2017).  (*Id.*)  Nevertheless, NP Buchanan updated Freeman's medical charts to show that he would receive a number of antibiotics and Tylenol to treat his symptoms.  (*Id.*, PageID.935-936.)

The next day, September 29, 2017, Freeman's dressing was changed.  (ECF No. 81-2, PageID.931.)  Also, on September 29, 2017, NP Buchanan referred Freeman's air mattress request to Dr. Coleman, who approved the request within hours.  (*Id.*, PageID.937-938.)  After approval, NP Buchanan immediately updated Freeman's medical chart to include an air mattress.  (*Id.*, PageID.939-940.)

---

[6]    Kites are messages that are sent internally within the MDOC facility.

On October 3, 2017, NP Buchanan met with Freeman for a follow-up evaluation. (ECF No. 81-3, PageID.1010.) Freeman was sent back to War Memorial Hospital because he presented a "fever, chills, and a temperature of 103.8 degrees." (*Id.*) NP Buchanan attested that Freeman's deteriorating health was likely a result of Freeman "not taking his antibiotics appropriately." (*Id.*) When Freeman discharged back to URF, NP Buchanan ordered (1) Freeman's bandages changed every three to five days or as needed, (2) Freeman to take his medications as prescribed, and (3) nurses to apply duoderm[7] to his left hip wound and change every three to five days, and (4) nurses to apply medihoney[8] to Freeman's left patella (knee) every one to two days. (*Id.*)

From October 9, 2017 to October 24, 2017, NP Buchanan treated Freeman six times. (ECF No. 81-3, PageID.1011-1012.) During those six treatments, NP Buchanan monitored the healing of Freeman's wounds (hip, left knee, and coccyx), requested a dietary supplement for Freeman, assisted the changing of Freeman's bandages, issued a bandage changing schedule that would avoid changing the bandages every day, and ordered more antibiotics for Freeman. (*Id.*)

---

[7]     DuoDERM is a medical brand for wound dressings. ConvaTec, *DuoDERM® Dressings*, www.convatec.com, https://www.convatec.com/wound-skin/duoderm-dressings/ (last visited Nov. 13, 2020.)

[8]     Medihoney is a medical gel brand that is used to treat wounds and burns. Wound Source, *MEDIHONEY® Gel Wound & Burn Dressing*, www.woundsource.com, https://www.woundsource.com/product/medihoney-gel-wound-burn-dressing (last visited Nov. 13, 2020.)

On January 4, 2018, Freeman underwent surgery to remove debris and repair the lingering wounds on Freeman's hip and left knee from his pressure ulcers.  (ECF No. 82-5, PageID.1115.)

## IV.    Summary of Plaintiff's Claims and the Factual Allegations Supporting His Claims

The table below summarizes each of Freeman's claims against each Defendant and the alleged facts supporting the claims.

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | RN Headley | 8th Amendment Deliberate Indifference | 9/11/2017 | RN Headley confiscated Freeman's air mattress and catheters despite being aware of the medical concerns her conduct would cause Freeman.  As a result, Freeman contracted a urinary tract infection. (ECF No. 66, PageID.550-551.) |
| 2 | RN Headley | Intentional Infliction of Emotional Distress | 9/11/2017 | RN Headley confiscated Freeman's air mattress and catheters despite being aware of the medical concerns her conduct would cause Freeman.  As a result, Freeman contracted a urinary tract infection. (ECF No. 66, PageID.550-551.) |
| 3 | RN Stain | 8th Amendment Deliberate Indifference | 9/22/2017 | During a grievance interview, RN Stain saw the pleasure ulcer on Freeman's body and heard Freeman complain about the pain. She informed him that she could not do anything about it because he was in administrative segregation and because it would be inconvenient to help him.  (ECF No. 66, PageID.551.) |
| 4 | RN Stain | Intentional Infliction of Emotional Distress | 9/22/2017 | During a grievance interview, RN Stain saw the DPU on Freeman's body and heard Freeman complain about the pain. She informed him that she could not do anything about it because he was in administrative segregation and because it would be inconvenient to help him.  (ECF No. 66, PageID.551.) |
| 5 | NP Buchanan | 8th Amendment Deliberate Indifference | 9/29/2017 | Freeman informed Buchanan that he was in pain, but she dismissed him as being belligerent and refused to help mitigate his pain. The failure to mitigate the pain |

| Claim # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| | | | | included a failure to provide Freeman with an air mattress.  (ECF No. 66, PageID.551.) |
| 6 | NP Buchanan | 8th Amendment Deliberate Indifference | 10/14/2017[9] | Despite knowing that the dressing around Freeman's legs needed to be changed, NP Buchanan changed the Freeman's medical orders to have the dressings changed every three to five days.  (ECF No. 66, PageID.551.) |
| 7 | NP Buchanan | Intentional Infliction of Emotional Distress | 10/14/2017 | Despite knowing that the dressing around Freeman's legs needed to be changed, NP Buchanan changed the Freeman's medical orders to have the dressings changed every three to five days.  (ECF No. 66, PageID.551.) |
| 8 | Dr. Coleman | 8th Amendment Deliberate Indifference | 9/14/2017 | Freeman requested that Dr. Coleman issue Freeman a special medical accommodation for an air mattress. Coleman initially denied the request but granted the request a few days later when Dr. Coleman learned of Freeman's sores. ECF No. 66, PageID.551.) |
| 9 | Dr. Coleman | Intentional Infliction of Emotional Distress | 9/14/2017 | Freeman requested that Dr. Coleman issue Freeman a special medical accommodation for an air mattress. Coleman initially denied the request but granted the request a few days later when Dr. Coleman learned of Freeman's sores. ECF No. 66, PageID.551.) |

## V.    Relevant Grievances filed by Plaintiff and Pursued Through Step III

Summarized in the table below are the relevant grievances filed by Freeman and pursued through Step III.

| Grievance Number | MDOC Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 71-3, PageID. |
|---|---|---|---|---|
| URF-17-09-2753-12I | RN Headley (RN Stain | On 9/11/17, his air mattress was taken away | Denied at Step I; denial upheld | 634-640 |

---

[9]    No specific date was given in Freeman's amended complaint, but the grievance containing the allegation listed October 14, 2017 as the incident date.  (ECF No. 81-6, PageID.1056.)

| Grievance Number | MDOC Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. 71-3, PageID. |
|---|---|---|---|---|
| | was Step I respondent and was later named at Step III) | when he was placed in segregation and he was denied catheters. | through Step III. | |
| URF-17-09-2837-28J | RN Headley (Corizon Def. Dr. Coleman grieved) | Between 9/14/17 and 9/21/17, his air mattress was taken away when he was placed in segregation, despite Freeman having received an air mattress previously. | Rejected at Step I for violating P.D. 03.02.130. Instructed to appeal grievance (URF-09-2753-12i) to next step; rejection upheld through Step III. | 653-659 |
| URF-17-10-2962-12E1 | None (Corizon Def. NP Buchanan grieved; RN Stain was Step I respondent) | Failure to treat pressure ulcer on 9/29/17. | Denied at Step I; denial upheld through Step III. | 641-647 |
| URF-17-10-2961-12E3 | RN Headley (RN Stain was Step I respondent) | Failure to address leaking dressing between 10/3/17 and 10/4/17. | Denied at Step I; denial upheld through Step III. | 629-633 |
| URF-17-10-3195-12E3 | RN Headley and RN Stain. | Failure to treat infections and ulcers, request for better pain management, request for transfer between 10/14/17 and 10/25/17. | Denied at Step I; denial upheld through Step III. | 622-628 |

## VI.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VII.   Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter*

*v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that

clarifies the contours of the controversy." *Id*.  When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019.  Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

whether a Class I misconduct or a Class II or III misconduct[10], the inmate must first raise the issue during the Misconduct Hearing.  *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011).  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[10]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[11]

## VIII.  Eighth Amendment Deliberate Indifference Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is

---

[11]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted). The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added). Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition: A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference

"entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.

> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailer, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that

a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner

received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

## IX.    Freeman's Intentional Infliction of Emotional Distress

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read

Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the undersigned respectfully recommends that the Court exercise its screening authority and dismiss all of Freeman's intentional infliction of emotional distress.

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'

21

– that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

As described by the United States District Court, Eastern District of Michigan:

> Under Michigan law, the elements of intentional infliction of emotional distress ("IIED") are: (1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant intended to cause the plaintiff severe emotional distress or was reckless with regard to whether the plaintiff would suffer such distress; (3) that the defendant's actions actually caused emotional distress; and (4) that the emotional distress was severe. *Melson v. Botas*, 497 Mich. 1037, 863 N.W.2d 674, 674–75 (2015) (citing *Graham v. Ford*, 237 Mich.App. 670, 604 N.W.2d 713, 716 (1999)). "Sufficient proof must be adduced of intentional infliction and something much more than simply aggravation must be shown to make out a case of emotional distress." *Bhama v. Bhama*, 169 Mich.App. 73, 425 N.W.2d 733, 736 (1988). This requires plaintiff to show more than "hurt feelings," but "seeking and receiving medical treatment" is not "a condition precedent to satisfying the element of extreme emotional distress." *See McCahill v. Commercial Union Ins. Co.*, 179 Mich.App. 761, 446 N.W.2d 579, 584 (1989).

*Gilliam v. Ordiway*, 147 F. Supp. 3d 664, 669 (E.D. Mich. 2015).

In Freeman's amended verified complaint (ECF No. 66), he fails to allege any facts that show that he suffered emotional distress (third element) and that his emotional distress was severe (fourth element). The only harms that Freeman claims to suffer are urinary tract infections, pressure ulcers, and physical pain stemming from his infections or ulcers. (ECF No. 66, PageID.550-552.) "[T]he tort requires

actual 'emotional distress.'" *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005).   Each of the injuries that Freeman suffered are a result of his underlying condition – being a paraplegic – and not a result of mental distress. Consequently, the undersigned concludes that Freeman failed to establish *prima facie* intentional infliction of emotional distress claims against Defendants.

### X.    The MDOC Defendants' Motion for Partial Summary Judgment (ECF No. 70)

#### a.  Personal Involvement Issue

The MDOC Defendants contend that the Court should dismiss Freeman's Eighth Amendment deliberate indifference claim against RN Stain because Freeman failed to allege facts to establish personal involvement.  (ECF No. 71, PageID.594-596.) The undersigned disagrees.

In Freeman's amended complaint, he alleges that RN Stain interviewed him on September 22, 2017 concerning a grievance that he filed regarding his air mattress.  (ECF No. 66, PageID.551.)  During that interview, RN Stain explained to Freeman that he should inform health care services if he developed an ulcer.  (*Id.*)  In response, Freeman showed Defendant RN Stain an ulcer that already formed on his leg. (*Id.*.)  After seeing the ulcer, RN Stain allegedly informed Freeman that she would not provide him with medical assistance for two reasons: (1) because Freeman was in administrative segregation, and (2) because the process of helping his was inconvenient.  (*Id.*)

As described above, Freeman alleges that RN Stain had personal involvement. RN Stain was aware of Freeman's ulcer, chose not to treat the ulcer, and then

23

provided Freeman with two reasons as to why she would not treat Freeman. Accordingly, the undersigned concludes that Freeman alleged sufficient personal involvement as to his Eighth Amendment deliberate indifference claim against RN Stain.  Accordingly, the undersigned does not recommend the Court grant the MDOC Defendants' motion on the basis of lack of personal involvement.

### b. Exhaustion Issue

The MDOC Defendants also contend that Freeman failed to properly exhaust his claims against RN Stain.  (ECF No. 71.)  As shown in the summary chart in Section IV, Freeman's claims against Stain are based on an incident in mid-September 2017.  There are two potentially relevant grievances – **URF-17-09-2753-12I** and **URF-17-09-2837-28J** – because these grievances contain complaints concerning incidents occurring in mid-September 2017.[12]  (ECF No. 71-3, PageID.634-640, 653-659.)  After a careful review of the record, the undersigned agrees with the MDOC Defendants for several reasons.

First, the MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance.  *Mattox*, 851 F.3d at 596.  An inmate must name each defendant in a properly exhausted grievance before he files a federal complaint.  *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a

---

[12]    Although RN Stain is named in grievance **URF-17-10-3195-12E3** and the grievance is denied through Step III, grievance **URF-17-10-3195-12E3** is inapplicable because it complains about RN Stain's actions during an October 2017 incident.  (ECF No. 71-3, PageID.622-628.)

claim against any other employee"). Where a prisoner fails to name a Defendant in his Step I grievance, or mentions an individual is involved for the first time during the Step III appeal of the denial of a grievance, the claim against that individual is not properly exhausted. *Id*. at *6. With respect to grievance **URF-17-09-2753-12I**, Freeman named RN Headley as the subject of this grievance at Step I. RN Stain was the respondent at Step I. (ECF No. 71-3, PageID.637.) Freeman only named RN Stain in his Step III appeal. (*Id*., PageID.640.) Specifically, Freeman only named RN Stain in a difficult to read two-page handwritten attachment to his Step III appeal. (*Id*., PageID.639-640.) In MDOC's Step III response, as shown in the excerpt below, there is no indication that MDOC addressed Freeman's newly included allegation against RN Stain.

**Step III Grievance Response**

**DALE FREEMAN**                752710

**URF**    17-09-2753

Grievant alleges he was inappropriately denied access to catheter supplies during placement into segregation on September 11, 2017.

All relevant information within the electronic medical record has been reviewed. Step I and Step II appropriately addressed this grievance and are affirmed at the Step III appeal. As noted, the grievant did not have a current medical detail or special accommodation for either catheters or an air matters on September 11, 2017, as both had expired May 2016. It is noted the grievant continued to receive both items, catheters last being issued December 4, 2017 and an air mattress August 18, 2017. The matters stated within this grievance have been referred for quality review. It appears the issue has been resolved as it pertains to the grievant and no further relief can be provided.

Grievance resolved.

Response of  Bureau of Health Care Services          Date:    1/24/2018

Approved: _R. Harbaugh, RNZ_____     Date: _1/25/18_____
                R. Harbaugh, RN

                                                          JAN 3 0 2018
_R. D. Russell_____
Richard D. Russell  Manager, Grievance Section Office of Legal Affairs          Date Mailed

(*Id.*, PageID.640.)  Because MDOC did not address Freeman's allegation against RN Stain, Freeman did not properly exhaust his claim against RN Stain through grievance **URF-17-09-2753-12I**.

Second, grievance **URF-17-09-2837-28J** – the other potentially relevant grievance – was rejected through Step III for being duplicative of grievance **URF-17-09-2753-12I**.  (ECF No. 71-3, PageID.653-659.)  Ordinarily, when a grievance is rejected for a failure to satisfy policy, the grievance fails to demonstrate proper exhaustion. *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009).  A common exception

26

to the rejection rule occurs when the rejected grievance is duplicative of an earlier grievance.  If a grievance is rejected for being duplicative of an earlier grievance, then the duplicate grievance contains an issue or issues that MDOC has already had an opportunity to address, and the duplicative grievance will construed as having the same disposition as the original grievance.

Here, the undersigned concludes that there is no genuine issue of fact regarding whether Freeman failed to properly exhaust his claims against RN Stain. As noted above, Freeman did not exhaust his claim against Stain in grievance **URF-17-09-2753-12I**, and grievance **URF-17-09-2837-28J** is duplicative of that grievance. Furthermore, a review of grievance **URF-17-09-2837-28J** confirms that Freeman failed to name RN Stain.  (ECF No. 71-3, PageID.653-659.)  As shown in the excerpt below, which shows part of Freeman's Step I grievance, Freeman named RN Stranaly but not RN Stain.  (*Id.*, PageID.656.)

MICHIGAN DEPARTMENT OF CORRECTIONS
PRISONER/PAROLEE GRIEVANCE FORM

4835-4247 10/94
CSJ-247A

Date Received at Step I    SEP 25 2017

Grievance Identifier: URF 17 09 1 2837 1 28 J

Be brief and concise in describing your grievance issue.  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| DALE FREEMAN | 752710 | URF | Q-cell -1 | 9-14-17 | 9-21-17 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 9-14-17, 8:20 AM
If none, explain why. I WROTE MULTIPLE KITES TO HEALTH CARE BETWEEN 9-14-17 AND 9-21-17 TO SEND KITE RESPONSE. AT ADA REVIEW I ASKED THE DOCTOR ABOUT MY AIR MATTRESS DENYING IN APPOINTMENT FOR 9-13. INFECTION I CAUGHT 9-13-17 ON 9-14-17 HE TOLD ME TO WAIT. THERE TO SPEAK ABOUT THAT, I ASKED OFFICER CAMBELL IN WHEEL ME OUT AT 8:20 AM. SEE PORTABLE CAMERA THAT RECORDED EVERYTHING. BEFORE THAN I WROTE KITES TO DOCTOR REGARDING SITUATION.

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.

Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. I'M WRITING THIS GRIEVANCE AGAINST MICHIGAN DEPARTMENT OR SERVICES REGIONAL MANAGER NURSE 14TH AMEN RILKEY J COLEMAN FOR VIOLATION OF MY EIGHTH AMENDMENT 03.03.130 CRUEL AND UNUSUAL PUNISHMENT, VIOLATION OF AMERICAN DISABILITY ACT, DELIBERATE INDIFFERENCE WHICH LEAD TO PHYSICAL INJURY TO MY LEFT LEG FOR DENYING MY SPECIAL ACCOMMODATIONS DETAIL FOR MY AIR MATTRESS ON 9-14-17 11:11 AM, BUT I NEVER RECIEVED KITE RESPONSE UNTIL TODAY 9-21-17. ON THE DETAIL IT STATES REASON FOR AIR MATTRESS IS TO PREVENT DECUBITUS ULCERS (WHICH IN MY FILE IT STATES I CAME TO PRISON WITH ULCERS, FOR I PARAPLEGIC. (2/4 CSW) DUE TO THE FACT THAT MY AIR MATTRESS HAVE BEEN GONE SINCE 9-11-17 (SINCE UPON SEGREGATION) I HAVE A BED SORE ON MY LEG, WHICH I SENT MULTIPLE KITES TO PREVENT FROM HAPPENING, AND SPOKE WITH NURSES ON DAILY OCCASIONS TO PREVENT, NURSES GARLAND MERLING CHAKED ... WANTED TO SPEAK WITH BECAUSE SEG OFFICERS MILLER AND LIBBY ... I WAS NOTICED THE SORE ON 9-14-17 AND ASK A KITE IN WAS SEEN AND WAS TOLD IT WAS ONLY SKIN BREAKAGE, BUT THAT ONLY CAN OCCUR FROM SLEEPING ON THE PRISON MATTRESS, MEDICIANAL NURSE RICKLEY COLEMAN CAUSED PHYSICAL INJURY FOR DENYING MY AIR MATTRESS, WHICH IN FACT I ROOT INTO URF WITH ONE PRESCRIBED FROM PHYSICIAN AT Brooks, I ALSO GOTTEN REPLACE MENTS FROM NURSE HEDLEY (BROWN) IN THE MONTOS OF — Dale JUNE, JULY, AUGUST 2017. SO FOR MY AIR MATTRESS → See ATTACHED

Grievant's Signature

RESPONSE (Grievant Interviewed?  ☐ Yes  ☒ No   If No, give explanation.  If resolved, explain resolution.)

---

(*Id.*)  In an included affidavit, Grievance Coordinator (GC) McLean confirms that Freeman named RN Stranaly in grievance **URF-17-09-2837-28J** but not RN Stain. (ECF No. 71-4, PageID.677.)  Freeman failed to provide any evidence to rebut GC Mclean's statement.  Grievance **URF-17-09-2837-28J** was rejected as duplicative of grievance **URF-17-09-2753-12I**.  (ECF No. 71-3, PageID.658.)  But this grievance also fails to name Stain.

**XI.  CCH Defendants' Motion for Summary Judgment (ECF No. 81)**

**a.  Claim Against NP Buchanan**

28

### i. Exhaustion Issue

As noted in the summary chart in Section IV (*supra*, pages 8-10), Freeman makes two Eighth Amendment deliberate indifference claims against NP Buchanan, The CCH Defendants concede that Freeman properly exhausted the claim alleging that NP Buchanan failed to treat Freeman's ulcer on September 29, 2017, which is claim five in the summary chart in Section IV.  This complaint is also the subject of grievance **URF-17-10-2962-12E1**.  (ECF No. 81, PageID.889-893; ECF No. 81-6, PageID.1072-1078.)

However, CCH Defendants say that Freeman failed to properly exhaust his other Eighth Amendment deliberate indifference against NP Buchanan.  Freeman alleges that NP Buchanan altered Freeman's medical charts to prevent him from having his leg's bandages adequately changed, which is claim 6 in the claims summary chart in Section IV.  (ECF No. 81, PageID.889-893.)  The undersigned agrees.

Freeman neglected to name NP Buchanan at Steps I and II.  (ECF No. 81-3, PageID.622, 625.)  As shown in the excerpt below, in Freeman's Step III appeal in grievance **URF-1710-3195-12E3**, he named NP Buchanan and complained about how his infection and ulcer could have been prevented with proper bandages.

Case 2:18-cv-00068-RMJ-MV   ECF No. 81-6,  PageID.1059   Filed 06/09/20   Page 7 of 69

SURE I GET THE PROPER ANTIBIOTICS TO TREAT THIS
ON GOING INFECTION IN MY PRESSURE ULCERS, THATS SENT ME
TO THE HOSPITAL 3 TIMES FROM 9-25 40 9-28-17 , 9-30 40 10-2-17
AGAIN ON 10-19-17 .... THE INFECTION IS NOT GOING AWAY
EVEN THOUGH IM GIVING MULTIPLE ANTIBIOTICS MY BODY AND
PRESSURE ULCERS FEEL WORSE, DRESSING CHANGES ARE PAINFUL
I WOULD LIKE TO GET TRANSFERED TO A FACILITY THAT PROVIDE
BETTER OFF SITE HOSPITAL CARE THAT CAN LOWER THE
RISK OF INFECTIONS THAT CAN CAUSE AMPUTATION, DEATH
OR ANY OTHER SERIOUS BODILY HARM. WITH A CURATE DIAGNOSIS
TO PREVENT MEDICAL MALPRACTICE AND NEGLIGENCE .. AGAIN

I ALSO WOULD LIKE A FACILITY THAT WILL TAKE MORE SERIOUS
STEPS TO SEE TO THAT I HAVE PAIN MEDICATION TO STOP THE
PAIN AND SUFFERING INSTEAD OF OVER THE COUNTER MEDS, AND
MEDICATION THAT HAS BEEN PRESCRIBED FOR OVER 3 YEARS
MOBIC AND TYLENOL .

I ALSO WOULD LIKE TO BE AWARDED FOR ANY DAMAGES
AS FAR AS INJURY THAT RESULTED FROM VIOLATIONS OF 8TH
AMENDMENT RIGHTS OR MEDICAL MALPRACTICE NEGLIGENCE
TO CIVIL ACTIONS IN THE FUTURE ... IF IT COMES
OR ANY OTHER INJURYS THAT RESULTED FROM PRISON MEDICAL OFFICIALS FOR PRESSURE ULCERS
OR OUTSIDE ASSISTANCE
I WOULD LIKE TO NOTE THAT THE FACILITY I'M
CURRENTLY AT CAN NOT TREAT THE INFECTIONS I HAVE
AND THEY DO AGREE AND HAVE TOLD ME THAT I NEED
TO BE AT A INFIRMARY ....      TIFFANY HASKE R, NURSE
                               JENN HEDLY    R, NURSE
I FEAR FOR LOSING MY LEGG       BETHANY STAINE    SUPERVISOR NURSE
OR DEATH DUE TO INFECTION       BRENDA BUCANON NURSE PRACTION
THATS BEEN ON GOING AND
TREATED BY WAR MEMORIAL
HOSPITAL , AND URF FACILITY
ALL THIS COULD HAVE BEEN PREVENTED
MULTIPLE TIMES STARTING WITH SERIOUS        DALE FREEMAN
MEDICAL SUPPLIES , PROPER BANDAGE ,          # 752710
PROPER DIAGNOSIS, I.V. ANTIBIOTICS
AND OTHER STEPS ......            Dale
                        C cell - 1
                  PLEASE ACCEPT
                  I'M LATE FILING
                  DUE TO WAITIN ON
(4 COPIES       CHANCE TO RESOLVE
                FROM FAMILY
                COMPLAINT AMOUNT  10-28-17
                WAITING TO SEE
                IF INFECTION
                LEAVE (CURE) PREVENT
                THATS WHY IM LATE

MDOC Office of Legal Affairs
Complete and Accurate Record                    Scanned 08/28/2019

(ECF No. 81-6, PageID.1059.)

Grievance **URF-1710-3195-12E3** was denied on the merits at Steps I, II, and

III.  (ECF No. 81-6, PageID.1053-1059.)  But a review of the Step III response

indicates that the MDOC did not address Freeman's claim against Buchanan, which he raised for the first time in his Step III appeal.  Accordingly, the undersigned concludes that Freeman did not properly exhaust his allegation that NP Buchanan played a role in preventing Freeman from receiving necessary dressing for the ulcer on his leg.

### ii. Merits Argument: NP Buchanan's Failure to Adequately Treat Freeman's Pain (Claim Five)

For the following reasons, it is the opinion of the undersigned that Freeman also failed to establish a cognizable Eighth Amendment deliberate indifference claim based on NP Buchanan's inadequate treatment of Freeman's pain, which is claim five in the claims chart in Section IV.  Specifically, Freeman alleges that NP Buchanan inappropriately delayed issuing Freeman an air mattress to prevent pressure ulcers and his on-going pain.

Because Freeman's injury is non-obvious and Freeman's claim challenges the adequacy of his pain treatment, Freeman needed to submit verifying medical evidence to show that the inadequate treatment caused him harm to satisfy the objective component.  *See Napier*, 238 F.3d at 742; *Blackmore*, 390 F.3d at 898. Freeman contends that the objective component is satisfied because there is verifying medical evidence in the record.  (ECF No. 85, PageID.1140.)  Freeman points to his medical records to show that he is paralyzed from the waist down and that the paralysis may cause complications.  (*Id*.)  The medical records do show that he is paralyzed from the waist down and that he has suffered complications.  (*See* ECF No. 81-2.)  However, there are no verifying medical records that show how NP Buchanan's

treatment of Freeman's pain was inadequate and caused Freeman harm.   Due to the lack of verifying medical records, the undersigned concludes that Freeman failed to satisfy the objective component.

Freeman also failed to establish the subjective component because there is no evidence to show that NP Buchanan "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm." *Rhinehart*, 894 F.3d at 739 (italics in original).  As discussed in Section III, NP Buchanan was among the nurses to monitor Freeman's pain and signs of infection, which may have entitled him to an air mattress.  After the initial evaluations, NP Buchanan explained to Freeman that he did not score high enough on the diagnostic test to entitle him to an air mattress.   During a subsequent evaluation on September 25, 2017, Freeman showed signs of an infection (pressure ulcer) and was sent to see Dr. Canlas.  The day after Freeman returned from his visit with Dr. Canlas, NP Buchanan requested an air mattress for Freeman from Dr. Coleman.  Within a few hours, Dr. Coleman approved the request and NP Buchanan updated Freeman's medical chart to reflect that Freeman should have an air mattress.

Simply put, Freeman's medical record shows that NP Buchanan did not consciously disregard a serious risk of harm by not issuing Freeman an air mattress. Initially, Freeman's score on the applicable diagnostic test prohibited Freeman receiving an air mattress.   Later, when Freeman's condition deteriorated, NP Buchanan acted swiftly to issue have an air mattress issued.  Accordingly, the

undersigned concludes that there is no genuine issue of fact that Freeman failed to satisfy the subjective component.

### iii. Merits Argument: NP Buchanan's Failure to Change Freeman's Leg's Dressing (Claim Six)

The parties do not dispute that Freeman's hip and left knee were bandaged because of pressure ulcers that formed or that Freeman suffered from a series of infections.  Instead, they dispute whether NP Buchanan was deliberately indifferent when NP Buchanan ordered schedules to change Freeman bandages that did not permit daily changes.  For the following reasons, the undersigned concludes that there is no genuine issue of fact that Freeman failed to establish an Eighth Amendment claim.

Again, when "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n.5.  To satisfy the objective component, Freeman needed to submit verifying medical evidence to show that the inadequate treatment caused him harm. *See Napier*, 238 F.3d at 742; *Blackmore*, 390 F.3d at 898.  Similar to the analysis of Freeman's earlier Eighth Amendment claim against NP Buchanan (claim five), Freeman failed to submit verifying evidence that would show how NP Buchanan's decision to treat Freeman's bandages caused Freeman a serious risk of harm.  Without such evidence, the undersigned concludes that there is no genuine issue of fact that Freeman failed to establish the objective component.

There is also insufficient evidence in the record to show that NP Buchanan "acted with a mental state 'equivalent to criminal recklessness.'" *Rhinehart*, 894 F.3d at 738.  Doctors and medical health providers – like NP Buchanan – are "not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart*, 894 F.3d at 738.  As described in Section III, NP Buchanan consistently monitored Freeman throughout September and October 2017 to identify whether pressure ulcers and/or an infection developed.  When Freeman developed pressure ulcers, NP Buchanan created a schedule for when Freeman's dressings needed to be changed.  As described in NP Buchanan's affidavit and Freeman's medical records, that schedule was detailed enough to provide different changing schedules for the hip and left knee wounds.  (ECF No. 81-3, PageID.1011; ECF No. 81-2, PageID.960.)  NP Buchanan noted that the schedule was designed to avoid the need to have Freeman's bandages changed every single day, which is exactly what Freeman wanted and is the basis for this Eighth Amendment deliberate indifference claim.  Because Freeman received care (having his bandages changed on a schedule) but disagrees with how the treatment was provided, NP Buchanan cannot be liable under the Eighth Amendment.  Consequently, the undersigned concludes that there is no genuine issue of fact that Freeman failed to satisfy the subjective component of claim [fill in] against NP Buchanan.

### b.  Claim Against Dr. Coleman

#### i.  Exhaustion Issue

The CCH Defendants argue that Freeman failed to properly exhaust his claim against Dr. Coleman.  (ECF No. 81, PageID.891-892; ECF No. 87, PageID.1181.)  The undersigned respectfully recommends that the Court deny CCH Defendants' motion as the exhaustion issue against Dr. Coleman because the record is not sufficiently clear and the undersigned was able to address the claim on the merits.

### ii.  Merits Argument

For the following reasons, the undersigned concludes that there is no genuine issue of material fact that Freeman failed to establish an Eighth Amendment deliberate indifference claim against Dr. Coleman.

With respect to the objective component, Freeman points to his medical records as evidence that he suffered increased complications after Dr. Coleman allegedly denied Freeman's request for an air mattress on September 15, 2020.  Freeman's medical records do show that pressure ulcers formed after September 15, 2020.  However, the record does not show that Dr. Coleman's delay in authorizing an air mattress for Freeman specifically caused Freeman's further complications.  Without the required verifying medical evidence, it is the opinion of the undersigned that there is no genuine issue of fact that Freeman failed to satisfy the objective component his claim.

Turning to the subjective component, Freeman needed to show that there is evidence to suggest that Dr. Coleman "acted with a mental state 'equivalent to criminal recklessness.'"  *Rhinehart*, 894 F.3d at 738.  Freeman did not.  As Dr. Coleman explained in his affidavit, he was "not involved in the day-to-day care

medical care of inmates." (ECF No. 81-4, PageID.1014.)  Dr. Coleman's role was to evaluate "requests for nonformulary medications requests, as well as nonformulary medical details and special accommodations." (*Id*.)  After reviewing a request with the patient's medical presentation, Dr. Coleman makes "recommendations regarding the appropriate course of treatment, which may be approving the  request, requesting additional information, or recommending an alternative treatment plan." (*Id*.)  On September 14, 2017, Dr. Coleman received an air mattress accommodation request for Freeman. (*Id*.)  Dr. Coleman's review of Freeman's medical records showed that he did not qualify for an air mattress accommodation. (*Id*.)  Freeman did not qualify for an air mattress under the MSAC guidelines.  (ECF No. 81-2, PageID.910.) Freeman needed to score a 14 or below to qualify for an air mattress accommodation. (ECF No. 81-5.)

Later, on September 29, 2017, NP Buchanan requested an air mattress accommodation for Freeman from Dr. Coleman.  (ECF No. 81-4, PageID.1014.)  Dr. Coleman granted NP Buchanan's request within hours because Freeman had recently developed a pressure ulcer on his left knee and presented with an infection. (ECF No. 81-2, PageID.937-938.)

The record shows that Dr. Coleman did not "act[] with a mental state 'equivalent to criminal recklessness.'" *Rhinehart*, 894 F.3d at 738.  During September 2017, Dr. Coleman received two air mattress accommodation requests for Freeman. Dr. Coleman deferred the first request because Freeman did not qualify for the accommodation at that time.  Dr. Coleman granted the second request within hours

36

because Freeman qualified.  As such, the undersigned concludes that there is no genuine issue of material fact that Freeman failed to establish the subjective component.

## XII.    Freeman's Motion for Summary Judgment (ECF No. 72)

Freeman argues that "there is no genuine issue as to any material fact and he is entitled to judgment as a matter of law" for all his claims against all Defendants. (ECF No. 73, PageID.710.)  In support of this argument, Freeman directs the Court's attention to pictures of his pressure ulcers (ECF No. 73-2), an excerpt of his medical chart (ECF No. 73-3), an affidavit from fellow inmate Dantrell Brown (ECF No. 73-4), grievance **URF-1709-2753-12I** documents (ECF No. 73-5), a list of products to prevent bed sores (ECF No. 73-6), articles describing how to prevent bedsores and urinary tract infections (ECF No. 73-7, 73-8, 73-9), Freeman's declaration stating that his medical supplies were not brought with him to URF in administrative segregation (ECF No.73-10), Freeman's misconduct report (ECF No. 73-11), and an unsworn statement from fellow inmate Phillip Hill (ECF No. 73-12).

For the reasons detailed in Section X, the undersigned concluded that Freeman failed to establish Eighth Amendment deliberate indifference claims against NP Buchanan and Dr. Coleman.  Neither Freeman's arguments nor the evidence Freeman provided alters the undersigned's conclusion.

As for Freeman's claims against the MDOC Defendants, the undersigned concludes that there are genuine issues of fact that preclude granting his motion.  To be successful on Freeman's Eighth Amendment deliberate claims, Freeman needed

to show that there are no issues of fact as to the objective and subjective components. The MDOC Defendants assert that there is insufficient evidence in the record for the Court to find that RNs Headley and Stain disregarded an excessive risk to Freeman's health and safety.  (ECF No. 77, PageID.835.)  The undersigned agrees.

According to the MDOC's policy directive, prisoners identified with medical conditions will have access to necessary medical supplies – which includes air mattresses and catheters – when the prisoners have a medical detail (for temporary access) or a special accommodation (for permanent access).  (ECF No. 66-1, PageID.565 (MDOC PD 04.06.160 ¶ E).)  Based on Freeman's medical records, Freeman did not possess a medical detail or a special accommodation for an air mattress, on September 14, 2017, when RN Headley allegedly denied him access to one.  (ECF No. 81-2, PageID.903-913.)  Despite not having a detail or accommodation, on September 15, 2017, the MDOC nurses evaluated Freeman to determine whether Freeman should be given access to an air mattress.  (ECF No. 81-2, PageID.912.)  But Freeman scored 15 on the Braden Scale, which means that Freeman was not then suffering a skin breakdown and was not entitled to an air mattress.  (*Id*.)  The undersigned concludes that Freeman has not demonstrated an absence of a genuine issue of fact because Freeman did not possess a detail or accommodation for an air mattress and because Freeman did not qualify for access to an air mattress.

On September 21 and 23, 2017, in response to complaints of pain in his right knee, Freeman was evaluated for signs of pressure ulcers and infections.  (ECF No.

81-2, PageID.915, 917.)  On both days, as shown in the excerpts below, there were no signs of infection or bleeding.  (*Id.*)

**MICHIGAN DEPARTMENT OF CORRECTIONS**

**NURSE PROTOCOL**

SITE:  URF E
COMPLETED BY:  Michael G. Brown, RN        (09/21/2017 7:17 AM) 10/10/2017 3:11 PM

Patient Name: DALE FREEMAN
DOB: ███████
ID#:  752710

Patient presenting with chief complaint(s)of: Integumentary.

Vital Signs:

| Date | Time | Temp | Pulse | Pattern | Resp | Pattern | BP | Sp O2 | Peak Flow | Weight Lb |
|------|------|------|-------|---------|------|---------|-----|-------|-----------|-----------|
| 09/21/2017 | 7:23 AM | 97.0 | 64 | | 16 | | 128/74 | 99 | | 170.00 |

ALTERATION IN SKIN INTEGRITY_____

Subjective:
Affected body part? Right knee
How did it occur? spontanious
Recent allergen exposure? no

Inmate to hs via WC. presents for kite re: "bed sore" to right knee. no active bleeding.

Signs  & symptoms of infection: No evidence of infection.

Date of last tetanus booster: 11/17/2016

inmate noted with superficial skin tear to right knee. no underminding or bleeding noted. "I need that air mat to prevent these." inmate educated on deferral. area cleansed with 0.9% NS and patted dry

Assessment:
Alteration in skin integrity.
Potential or actual infection.

Plan:
ORDERS

| Status | Order | Reason | Date |
|--------|-------|--------|------|
| completed | Medication allergies and other contraindications reviewed & pregnancy ruled out prior to treatment | | |
| completed | Sick call if symptoms do not subside or become more severe | | |
| completed | Patient education provided | | |

(ECF No. 81-2, PageID.915.)

**MICHIGAN DEPARTMENT OF CORRECTIONS**

**NURSE PROTOCOL**

SITE:  URF E
COMPLETED BY:  Tiffany Haske, RN      09/23/2017 7:08 PM

Patient Name: DALE FREEMAN
DOB: ████████
ID#:  752710

Patient presenting with chief complaint(s)of: Integumentary.

Vital Signs:
| Date | Time | Temp | Pulse | Pattern | Resp | Pattern | BP | Sp O2 | Peak Flow | Weight Lb |
|------|------|------|-------|---------|------|---------|------|-------|-----------|-----------|
| 09/23/2017 | 7:46 PM | 99.1 | 84 | | 16 | | 128/86 | | | 170.00 |

ALTERATION IN SKIN INTEGRITY_____

**Subjective:**
Affected body part? Left hip/knee
When did it occur? 5 Days
Recent allergen exposure? no
Patient complains of: pain,

Pt states " I've had bed sores before this is what happens. I noticed the one on my hip opened up a couple days ago, I had
it down to the bone before. It's from not having an air mattress."

**Objective:**
Wound Location: left hip/knee.
Wound Size:  L: 4.00 cm.  W: 2.00 cm.  D: .20 cm.

Signs  & symptoms of infection: No evidence of infection.

Date of last tetanus booster: 11/17/2016

Pt has partial thickness wound to L knee, tissue white ~4cm X 2cm X 0.2cm, clear drainage noted, slight erythema
surrounding open area. Wound to L hip ~3cm X 1cm X0.1cm see SOAP

**Assessment:**
Alteration in skin integrity.

(*Id.*, PageID.917.)

On September 23, 2017, nurses also explained to Freeman that the dressing

for an earlier wound on his hip needed to be changed every three days.  (*Id.*,

PageID.919.)  Freeman agreed with the nurses' explanation.  (*Id.*)

On September 25, 2017, Freeman showed signs on infection in his left knee.

(*Id.*, PageID.922.)

On the days immediately prior and after Freeman's interview with RN Stain

(September 22, 2017), Freeman was evaluated by other members of the nursing staff

and did not exhibit signs of bleeding or infection.  Further, on September 21, 2017,

Freeman complained about pain in his right knee, but the future pressure ulcer and

infection occurred on Freeman's left knee.  (ECF No. 81-2, PageID.914, 917.)  Based

on the forgoing evidence, it is the opinion of the undersigned that there is a genuine

issue of fact as to whether RN Stain recklessly disregarded a serious risk of harm to Freeman.

### XIII.  CCH Defendant's Motion to Strike Freeman's Reply

Under Local Rule 7.2(c), "Any reply brief that is hand-written or produced on a typewriter may not exceed ten (10) pages."  W.D. Mich. LCivR 7.2(c).  The Court may, however, permit parties to exceed the rule's page limit and/or permit further briefing.  *Id*.  In this matter, the Court has not permitted Freeman to exceed the Local Rule's page limit when he replied (ECF No. 82) to the CCH Defendant's response (ECF No. 76).  However, the undersigned reviewed Freeman's overlength and hand-written reply and concludes that the reply does not alter the undersigned's analysis regarding Freeman's claims against CCH Defendants.

Because Freeman reply does not alter the outcome of the parties summary judgment motions, the undersigned respectfully recommends that the Court deny CCH Defendants' motion (ECF No. 83) to strike Freeman's reply (ECF No. 82).

### XIV.  Recommendation

The undersigned respectfully recommends that this Court:

- dismiss Freeman's intentional infliction of emotional distress claims pursuant to the Court's screening authority,

- grant the MDOC Defendants' motion for partial summary judgment (ECF No. 70),

- deny Freeman's motion for summary judgment (ECF No. 72),

- grant the CCH Defendants' motion for summary judgment (ECF No. 81), and

- deny the CCH Defendants' motion to strike Freeman's reply to their response (ECF No. 83).

If the Court accepts the recommendation, Freeman's Eighth Amendment deliberate indifference claims against RN Headley will be the only remaining claim.

Dated:   December 4, 2020              /s/ *Maarten Vermaat*
                                       MAARTEN VERMAAT
                                       U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).