UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DALE FREEMAN, #752710,

        Plaintiff,

v.

JENNIFER HEADLEY, et al.,

        Defendants.
_____/

Case No. 2:18-cv-68

Hon. Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses a motion for summary judgment filed by Defendant Registered Nurse (RN) Jennifer Headley. (ECF No. 122.)

Plaintiff — State prisoner Dale Freeman — filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 11, 2018. Freeman is a paraplegic. He utilizes catheters to urinate and has a history of decubitus pressure ulcers (DPUs).[1] In his amended complaint filed March 2, 2020, Freeman asserted that while he was confined at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, four health care employees acted with deliberate indifference to his serious medical needs and

---

[1] A decubitus ulcer, more commonly known as a bed sore, is "a chronic ulcer that appears in pressure areas of skin overlying a bony prominence in debilitated patients confined to bed or otherwise immobilized, due to a circulatory defect." *Decubitus Ulcer*, Stedman's Online, https://stedmansonline.com /content.aspx ?id=mlrD0500002988 (last visited Jan. 31, 2022).

intentionally inflicted mental and emotional distress. (ECF No. 66, PageID.552.) On March 8, 2021, this Court dismissed all but Freeman's deliberate indifference claim against RN Headley. (ECF No. 100, PageID.1276.) RN Headley now moves for summary judgment on the grounds that Freeman has not placed verifying medical evidence in the record sufficient to show that Headley provided him with inadequate care, nor that she knowingly disregarded his serious medical needs. (ECF No. 122, PageID.1474-1486.) RN Headley also argues that she is entitled to qualified immunity. (*Id.*, PageID.1487-1489.)

The undersigned respectfully recommends that the Court grant RN Headley's motion for summary judgment because there are no genuine issues of material fact based on which a jury could find that RN Headley acted with deliberate indifference to Freeman's serious medical needs, and RN Headley is entitled to qualified immunity.

## II.   Additional Procedural History

Freeman's initial verified complaint asserted claims against ten URF employees related to their treatment of Freeman's medical conditions. (ECF No. 1.) On October 24, 2018, this Court issued an Opinion (ECF No. 9) and Order (ECF No. 10) dismissing two of those employees for failure to state a claim. On August 29, 2019, some of the remaining defendants moved for summary judgment based on exhaustion. (ECF No. 48.) The undersigned issued an R&R on the motion (ECF No. 51), but the Court dismissed the R&R and underlying motion as moot (ECF No. 65) after Freeman moved to amend his complaint (ECF No. 61).

Freeman's amended complaint was filed on March 2, 2020. (ECF No. 66.) There, he asserted claims of deliberate indifference and intentional infliction of emotional distress against only four URF employees. Between March 30, 2020, and June 9, 2020, the Defendants filed two motions for summary judgment based on exhaustion (ECF Nos. 70, 81) and Freeman filed a motion for summary judgment on the merits on his case (ECF No. 72). On March 8, 2021, this Court granted Defendants' motions with regards to all but Freeman's deliberate indifference claim against RN Headley. (ECF No. 100.) On March 9, 2021, this Court denied Freeman's motion for summary judgment. (ECF No. 101.)

RN Headley filed the present motion for summary judgment on July 27, 2021. (ECF No. 122.) Freeman responded (ECF Nos. 129, 130) and Headley replied (ECF No. 132). On January 7, 2022, Freeman moved to strike Headley's reply, or alternatively, for his motion to be taken as a sur-reply and considered by the Court in addressing Headley's motion for summary judgment. (ECF No. 134.) The undersigned denied Freeman's motion to strike but granted his request to take the motion as a sur-reply. (ECF No. 139.)

### III. Freeman's Factual Allegations

Freeman is paralyzed from the waist down. (ECF No. 66, PageID.550.) He has a history of developing DPUs. He requires catheters to urinate and, per Freeman, to prevent urinary tract infections (UTIs). (*Id.*)

On June 7, 2017, Freeman was transferred to URF. (*Id.*) Until September 11, 2017, URF provided Freeman with an air mattress, which it exchanged when necessary. (*Id.*)

On September 11, 2017, Freeman was placed in segregation for threatening behavior. (*Id.*) When Freeman asked the Corrections Officers (COs) to retrieve his air mattress and catheters from his general population cell, RN Headley informed him that he did not have active special accommodations or medical details for an air mattress or catheters. (*Id.*) At the time, Freeman told Headley that without his air mattress and catheters, he would develop DPUs and UTIs. (*Id.*) According to Freeman, Headley told him that if he wanted access to his air mattress and catheters, he should not have threatened a CO. (*Id.*, PageID.550-551.) Freeman subsequently submitted a grievance against RN Headley, which the respondent denied because Freeman's accommodation for the mattress and catheters had expired. (*Id.*, PageID.551.) Freeman says he developed a UTI the next day. (*Id.*)

On September 14, 2017, a doctor reviewed and denied Freeman's request for an air mattress. (*Id.*) On September 19, 2017, Freeman discovered a DPU on his leg. (*Id.*) On September 25, 2017, Freeman was hospitalized for DPUs and UTIs, which caused him immense pain. (*Id.*) After developing the DPUs, Freeman's request for an air mattress was revisited and approved. (*Id.*)

### IV. Freeman's Medical Records

Freeman's relevant medical records can be summarized as follows:

- July 9, 2013: Freeman received wound care for two DPUs. (ECF No. 66-1, PageID.563.)

- May 13, 2015: Health care staff noted that Freeman was at risk for DPUs. (*Id.*, PageID.560.) The staff member issued a one-year special accommodation order for an air mattress. (ECF No. 122-2, PageID.1493.)

- July 9, 2015: Health care staff noticed that Freeman had not requested new catheter supplies when he asked to exchange his air mattress. (*Id.*, PageID.1495.) Freeman indicated that he preferred to reuse his old, more flexible catheters. (*Id.*) The doctor advised Freeman of the risks associated with reusing catheters, including UTIs, and encouraged him to request and use new catheters monthly. (*Id.*)

- June 3, 2017: Freeman requested new catheters while in segregation, but the health care staff informed him that he no longer had a special accommodation for them and had not received them since November of 2016. (*Id.*, PageID.1500.)

- July 9, 2017: Freeman requested a new air mattress. (ECF No. 66-1, PageID.571.)

- July 11, 2017: Freeman exchanged his air mattress. (ECF No. 66-1, PageID.572.)

- August 18, 2017: RN Headley exchanged Freeman's air mattress. (ECF No. 122-2, PageID.1509.)

- September 6, 2017: RN Headley gave Freeman a health assessment and issued him a box of large gloves. (*Id.*, PageID.1511.)

- September 11, 2017: Freeman kited health care about RN Headley's refusal to allow officers to bring his catheters and air mattress into his segregation cell. (ECF No. 1-10, PageID.41.) Health care responded that the matter had been referred to a doctor. (*Id.*)

- September 12, 2017: Freeman was seen for chills, dizziness, shakiness, and burning with urination. (ECF No.122-2, PageID.1512.) Health care staff prescribed UTI medication, discussed the importance of using single-use catheters as directed, issued a medical detail order for catheters, lubricant, and wipes, and told Freeman to kite for more supplies when necessary. (*Id.*)

- September 14, 2017: Freeman again complained of a burning sensation with urination. (*Id.*, PageID.1514.) He also requested an accommodation for catheters and for an air mattress to prevent DPUs. (*Id.*) Health care staff issued special accommodation order for 28 catheters per week but deferred Freeman's request for an air mattress. (ECF No.122-2, PageID.1515-1516.)

- September 15, 2017: Health care informed Freeman that his request for an air mattress was denied because he did not meet facility qualifications. (*Id.*, PageID.1517.)

- September 18, 2017: Freeman requested antibacterial soap to clean his catheters because he was not provided enough catheters to use new ones every time he had to urinate. (ECF No. 1-12, PageID.51.)

- September 21, 2017: Freeman was seen for a sore on his right knee. (ECF No.122-2, PageID.1520.) Health care staff cleansed the area and patted it dry. (*Id.*) Freeman complained that he needed an air mattress to prevent bedsores. (*Id.*) Staff talked with Freeman about air mattress deferral again. (*Id.*) Staff then noted that there was an actual or potential infection and told Freeman to come back if symptoms became more severe. (*Id.*)

- September 23, 2017: Freeman was seen for the sore on his knee and a new sore on his hip. (*Id.*, PageID.1521.) Freeman again indicated that he needed an air mattress to prevent bedsores, and health care staff talked with him again about his deferral. (*Id.*) Staff applied antiseptic and dressed the area, noted that the sores were enlarging and told Freeman to contact health care if he needed his dressing changed and to come back if symptoms worsened. (*Id.*, PageID.1521-1522.)

- September 29, 2017: Health care staff issued Freeman a special accommodation for an air mattress based on Freeman's paraplegia, pressure ulcers, and recent hospital stays due to ulcers. (*Id.*, PageID.1523.)

V.   **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VI. Deliberate Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. It obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated

under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component was summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). There, the court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then

9

disregarded that risk" by failing to take reasonable measures to abate it.

A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "consciously expos[ed] the patient to an excessive risk of *739 serious harm."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

[A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions

10

> sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*,

11

553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

For the purposes of her summary judgment motion, RN Headley concedes that both DPUs and UTIs constitute serious medical needs.  (ECF No. 122, PageID.1477.)  However, she argues that Freeman has not put sufficient verifying medical evidence on the record to establish that her conduct caused the development of Freeman's UTI or DPUs (*id.*, PageID.1478-1483), nor that she acted with deliberate indifference (*id.*, PageID.1486-1487).  The undersigned agrees.

As an initial matter, the undersigned notes that it is not abundantly clear at this stage of the case that Freeman has a claim against RN Headley for denying him an air mattress, causing him to develop DPUs.  In the undersigned's December 4, 2020 R&R, which the Chief District Judge approved and adopted, Freeman's claim against RN Headley was identified as a deliberate indifference claim for "confiscat[ing] Freeman's air mattress and catheters despite being aware of the medical concerns her conduct would cause Freeman" resulting in Freeman's contraction of a UTI.  (ECF No. 93, PageID.1208.)  As a result, it appears that only Freeman's UTI-based claim against RN Headley remains.  But even if Freeman has a DPU-based claim against RN Headley, the undersigned finds that the claim should be dismissed for the same reasons that this Court dismissed Freeman's nearly

12

identical claim against the doctor who denied his special accommodation request: a lack of verifying medical evidence that Headley's conduct caused Freeman to develop DPUs or evidence that RN Headley acted with deliberate indifference. (*Id.*, PageID.93.)

Freeman's DPU claim against RN Headley is one of delay in treatment. Though Headley rejected Freeman's request for an air mattress on September 11, 2017, Freeman was ultimately issued a special accommodation for an air mattress on September 29, 2017, just three weeks later. (ECF No. 122-2, PageID.1523.) As such, to satisfy the objective component of his deliberate indifference claim, Freeman had to place medical evidence on the record verifying that because RN Headley did not provide him with an air mattress, he developed DPUs. *Napier*, 238 F.3d at 742. Although Freeman placed medical evidence on the record exhibiting that he developed DPUs after RN Headley denied him an air mattress, they do not show that the DPUs were a direct result of the denial.

But even if the medical records were sufficient, Freeman has not established a genuine issue of material fact as to whether RN Headley acted with deliberate indifference in denying his request. As noted above, the state of mind necessary to advance a deliberate indifference claim is beyond that of negligence. *Farmer*, 511 U.S. at 835. It is akin to criminal recklessness. *Rhinehart*, 894 F.3d at 738. Freeman asserts that RN Headley yelled at him when he requested his air mattress and catheters, telling him that he should have thought about his supplies before threatening URF staff and getting himself placed in segregation. (*Id.*, PageID.550-

13

551.) But that statement does not show that Headley recklessly disregarded Freeman's serious medical needs. The medical records show that Freeman did not have an active special accommodation for an air mattress, which would suggest that health care staff had previously determined that Freeman did not have a serious medical need for the mattress. (ECF No. 122-2, PageID.1501.) And a doctor did determine that Freeman was not eligible for an air mattress accommodation just three days after RN Headley denied him an air mattress. (*Id.*, PageID.1516-1519.) Simply put, there are no genuine issues of material fact for which a reasonable jury could find that RN Headley recklessly disregarded Freeman's serious medical need for an air mattress by enforcing MDOC policy concerning special accommodations.

Turning to RN Headley's denial of Freeman's request for catheters on September 11, 2017, the undersigned comes to the same conclusions. Once again, Freeman's claim is one of delay. The medical records show that Freeman was given catheter supplies on September 12, 2017 and received a special accommodation for catheter supplies on September 14, 2017. (*Id.*, PageID.1513-1514.) To satisfy the objective component of his catheter claim, Freeman had to put medical evidence on the record verifying that RN Headley's conduct led him to develop a UTI. *Napier*, 238 F.3d at 742. Freeman's medical records show that he complained of UTI symptoms on September 12, 2017 and was promptly prescribed medication to address his symptoms. (ECF No. 122-2, PageID.1512.) The records also show that a urine specimen was taken. (*Id.*) However, the records do not establish that Freeman actually had a UTI on September 12, 2017, nor do they establish that the UTI was a

14

result of going a day without catheter supplies. As Defendant points out, Freeman had a history of reusing old catheters — a practice that health care staff had warned him could lead him to develop UTIs. (*Id.*, PageID.1495.)

But once again, even had Freeman placed sufficient medical evidence on the record showing that he developed a UTI, and that the UTI was a result of going a day without catheters, he has not shown that RN Headley acted with deliberate indifference. Freeman's records show that he had not received catheter supplies for nearly a year. (*Id.*, PageID.1500.) In fact, three months before RN Headley denied Freeman's request for catheters in segregation, another RN had done the same, informing Freeman that he no longer had an accommodation or medical detail for catheter supplies. (*Id.*) And Freeman's prescription for Surgilube (a surgical lubricant) to assist in his self-catheterization had expired prior to RN Headley's September 6, 2017 health assessment of Freeman. (*Id.*, PageID.1510.) Nothing in the medical records leading up to Freeman's stay in segregation would have indicated to Headley that he had a serious medical need for catheters such that her decision to deny Freeman's request was reckless. Once again, there are no genuine issues of material fact for which a reasonable jury could find that RN Headley recklessly disregarded Freeman's serious medical need for catheters by enforcing MDOC policy concerning special accommodations.

## VII. Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar

15

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Phillips v. Roane Cty., 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Analyzing claims of qualified immunity involves a two-pronged test. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these prongs in either order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if the court finds that there is no constitutional violation, or that the right at issue was not clearly established. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first prong of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second prong. As the Supreme Court has

16

observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. Id., at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if

17

> the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix, supra*, at 309 (quoting *Anderson, supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

Because the undersigned finds that there are no genuine issues of material fact and that RN Headley was not deliberately indifferent to Freeman's serious medical needs, RN Headley is also entitled to qualified immunity.

### VIII. Recommendation

The undersigned respectfully recommends that the Court grant RN Headley's motion for summary judgment because there are no genuine issues of material fact relating to whether RN Headley acted with deliberate indifference to Freeman's serious medical needs. The record before the Court indicates that Headley did not do so. Accordingly, RN Headley is entitled to summary judgment and qualified immunity.

Dated:  February 14, 2022				/s/ *Maarten Vermaat*
						MAARTEN VERMAAT
						U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).